In the Matter of the Application of MABLE KRECH, Petitioner, for the Removal from Indian Lands of HARRY J. BOWLEY and Another, Respondents.

County Court, Cattaraugus County, November 8, 1929.

R. M. Codd, Jr., for the petitioner.

J. M. Seymour, for Harry J. Bowley and another, respondents, and the Seneca Nation of Indians.

BLACK, J. This is an application made by Mable Krech, a Seneca Indian residing on the Allegany Indian Reservation in the county of Cattaraugus, N. Y., individually, to remove Harry J. Bowley and Nevil France, white persons, from the said Indian reservation.

Upon the hearing of the application the following facts were agreed upon and stipulated by the parties through their respective attorneys, viz.:

" Petitioner is a member of the Seneca Nation of Indians and is married to Albert K. Krech, a white non-member of said Nation.

" The lands in question are a portion of the Allegany Reservation of said Nation located in the Territorial limits of Cattaraugus County of the State of New York.

" The lands in question are occupied by Defendant Harry J. Bowley as a residence, and by both defendants, as a place of business.

" The lands in question are no part of the common land of such nation, and are owned under allotment by Elmer Jones and Hattie Jones, his wife, both members of such Nation.

" That such lands are leased by said Jones Family to the Defendants above named."

The only authority claimed by petitioner for bringing this pro-

ceeding is section 8 of the Indian Law which reads in part as follows: " Except as otherwise provided by law, no person shall settle or reside upon any lands owned or occupied by any nation, tribe or band of Indians, excepting the members of such nation, tribe, or band * * *. The county judge of the county in which such lands are situated, upon complaint made to him, of such illegal residence, shall, if he thinks there is reasonable ground therefor, issue a notice directed to the person against whom complaint is made, requiring him to appear before such judge at a time and place therein specified, to answer the complaint. Such judge shall attend at the time and place mentioned in the notice, and upon proof of the personal service of such notice, shall take proof of the facts alleged in the complaint, and shall determine whether such person is an intruder upon the lands of such reservation." This section further provides the manner of removing the person if found to be an intruder. The last sentence of section 8 reads as follows: " The district attorney of any county in which reservation lands are situated, upon the written application of a majority of the chiefs, councilors or head men of the nation, tribe or band owning and occupying such lands, shall make complaint of any intrusion on such lands, and cause the intruders to be removed."

The question for determination here is whether an individual Indian can institute and maintain such proceedings or whether the proceedings must be instituted by the district attorney only upon application of the council. In this proceeding the council appears by its attorney and raises the question that the individual Indian does not have the right to maintain the proceedings.

The last sentence of section 8 states that the district attorney shall institute proceedings. It seems under the decision of *People* v. *Tracy* (1 Den. 617) that the district attorney is the only person authorized to bring the proceeding; but assuming that that part of the section relates merely to procedure there remains the question as to who is authorized to institute the proceeding.

The meaning of this last sentence of section 8 is clear. To say that it gives the individual Indian power to institute proceedings would be contrary to the common meaning and use of the words. It certainly must be held by the very words of this section that the proceeding can be instituted only upon the petition of a majority of the council. It is true that an individual Indian might be and in some instances undoubtedly is, injured in his business by competition from white settlers upon the reservation, but apparently his only remedy for removal of those settlers is through the action of the council. While it is not stipulated as

a fact, yet it developed upon the argument, without dispute, that a large number of white persons reside on the Indian lands holding title from individual Indians the same as Bowley and France. Among the places that have been so occupied for years are the J. M. Holt general store at Quaker Bridge, Maryland milk plant and other places    There are also a number of white residents living on the reservation who are employed by the Pennsylvania railroad, the Erie railroad and the Allegany State Park and other industries.    Some of these business enterprises and industries have furnished employment to Seneca Indians for years    To establish a precedent that an individual Indian, no matter what the motive, could successfully maintain such a proceeding would tend to establish a chaotic condition on the reservation and would result in hardship to many Indians employed in the various enterprises located upon the reservation.    It seems to me that the best interests of the Indians themselves require that the section be so construed that the proceeding may be instituted only by the council itself. The council is the legally constituted governing body of the Seneca Nation, and the Legislature certainly must have intended to place the police power to remove intruders in that body rather than in individuals.

The petitioner's application is, therefore, dismissed, without costs.